IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | : | |
|---|---|---|
| SAMUEL L. LEVY, JR., *et al.*, | : | |
| *Plaintiff*, | : | Case No. 1:20-cv-972 |
| vs. | : | Judge Jeffery P. Hopkins |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | : | |
| *Defendant*. | : | |

**OPINION & ORDER**

This case seeks to challenge the revocation by the United States Citizenship and Immigration Services ("USCIS") of an I-130 petition filed on behalf of Ms. Gulara Mamedova by her husband, Mr. Samuel Levy Jr. It is before the Court on the parties' cross-Motions for Summary Judgment. Docs. 16, 18.

For the reasons that follow, Defendants' Motion (Doc. 16) is **GRANTED** and Plaintiffs' Motion (Doc. 18) is **DENIED**.

**I. BACKGROUND**

Ms. Mamedova was born on August 17, 1961 in Uzbekistan. Doc. 28, ¶ 1. She was previously married to Tofig Mamedov in Uzbekistan, but the two divorced there on February 7, 2002. *Id.* at ¶ 2. Ms. Mamedova was admitted to the United States on April 6, 2003, on a B-2 nonimmigrant visitor visa. *Id.* at ¶ 4. Approximately six months later, on October 3, 2003, Ms. Mamedova's nonimmigrant visitor visa expired, and on May 20, 2004, Ms. Mamedova was issued a Notice to Appear by USCIS and placed into removal proceedings. *Id.* at ¶¶ 5, 6. On September 30, 2005, she married U.S. citizen Charles White in Cincinnati, Ohio. *Id.*

According to Ms. Mamedova, the marriage lasted only one day, as Mr. White went missing the day of the marriage. *See* Doc. 15, PageID 303. In June 2006, Ms. Mamedova formally divorced Mr. White. *Id.* He never filed an I-130 petition on her behalf. Doc. 29, ¶ 12.

The short duration of that union and the fact it was entered into when Ms. Mamedova was already in removal proceedings were not the only causes for concern. Additionally, before, during, and after that marriage, she lived with another person, Mr. Ismat Ahmedov, who was also in removal proceedings in the fall of 2005. Doc. 28, ¶¶ 13, 15. A week after Ms. Mamedova's marriage to Mr. White, Mr. Ahmedov married Ms. Leslie Johnson, a U.S. citizen. *Id.* at ¶ 15. That marriage was later determined to be fraudulent. *Id.* at ¶ 16. And when Ms. Mamedova procured her divorce from Mr. White, she was assisted by Mr. Bozhidar Bakalov. *Id.* at ¶ 11. Mr. Bakalov was convicted in 2009 of arranging hundreds of fraudulent marriages. *Id.* at ¶ 12.

Ms. Mamedova married Mr. Samuel Levy on June 20, 2006. *Id.* at ¶ 20. Shortly afterward, Mr. Levy filed an I-130 petition, seeking to classify Ms. Mamedova as an immediate relative for purposes of 8 U.S.C. §§ 1151(b)(2)(A)(i). *Id.* at ¶ 21. On August 25, 2007, USCIS issued a Notice of Intent to Deny Mr. Levy's petition (the "Notice"), to which he filed a timely response. *Id.* at ¶ 23. Five years later, on August 24, 2012, the USCIS reversed course and approved Mr. Levy's I-130. *Id.* at ¶ 24. On September 10, 2012, Ms. Mamedova filed a Form I--485 Application with USCIS, seeking adjustment to permanent resident status. *Id.* at ¶ 25. USCIS did not approve the application, and instead notified Mr. Levy of its intent to revoke its approval of Mr. Levy's I-130 petition on Ms. Mamedova's behalf. *Id.* at ¶ 27. In the Notice, USCIS informed Mr. Levy that it was revoking the petition pursuant to Immigration and Nationality Act (INA) § 204(c) as it had determined that Ms. Mamedova

2

married Mr. White to evade the immigration laws. Doc. 15, PageID 302. It noted its reasons for reaching that conclusion, including the various suspicious aspects of the marriage noted above. *Id.* at PageID 302–306. It further noted that INA § 204(c) bars approval of an I-130 petition for an alien who previously entered into a sham marriage, whether or not an I-130 associated with that sham marriage was ever submitted on the alien's behalf. *Id.* at PageID 305.

Mr. Levy responded to the NOIR, and USCIS reviewed his response but concluded it did not change the agency's decision. Doc. 28, ¶¶ 36–40. Mr. Levy appealed USCIS's decision to the BIA. *Id.* at ¶ 41. The BIA conducted a *de novo* review of the record and dismissed Mr. Levy's appeal. Doc. 15, PageID 159–61. Mr. Levy and Ms. Mamedova then sued USCIS in this Court, claiming that USCIS's revocation of Mr. Levy's I-130 Petition was arbitrary and capricious under the Administrative Procedures Act ("APA"), Doc. 1, ¶¶ 53–70, and violated their rights to due process under the Fifth Amendment of the U.S. Constitution. *Id.* at ¶¶ 80–85.

## II. STANDARD OF REVIEW

Typically, on summary judgment, courts ask whether a genuine issue of material fact exists that precludes summary judgment. *See* Fed. R. Civ. P. 56. In cases like this one challenging denial of an I-130 petition—which are not uncommon—the analysis is somewhat different. In these cases, courts do not ask "whether a genuine issue of material fact exists" because "the court's review is limited to the administrative record and does not entail independent factfinding." *Simaga v. U.S. Citizenship & Immigr. Servs..*, 2:21-cv-5098, 2023 WL 5209531, at *2 (S.D. Ohio Aug. 14, 2023) (Marbley, J.). Instead, "courts must ask whether or not as a matter of law the evidence in the administrative record permitted the agency to make

3

the decision it did." *Id.* (internal quotation marks and citation omitted). Because "the entire case on review is a question of law" summary judgment is often appropriate in these cases. *Id.* (internal quotation marks and citation omitted).

As to the substance of this Court's review, the Sixth Circuit has held that it is the APA that confers jurisdiction on district courts to review USCIS decisions as to whether or not to grant I-130 petitions. *Adi v. United States*, 498 Fed. Appx. 478, 480 (6th Cir. 2012). This Court thus reviews USCIS's revocation of the I-130 Petition under the APA's "deferential standard." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006). The Court may not set aside USCIS's action unless it finds that the action "is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2)(A)). An agency's decision is arbitrary and capricious "if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Id.*

As to Plaintiffs' due process claim, the Fifth Amendment forbids the federal government from depriving persons of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. Due process rights only attach "when a plaintiff asserts a liberty or property interest granted by the Constitution, a federal statute, or a state statute." *Simaga*, 2023 WL 5209531, at *8. So to succeed on their due process claim, plaintiffs need to first show they have a protected liberty or property interest. Then, they must show they were deprived of that interest using a decision-making process that "contravened notions of due process." *Id.* (quoting *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)). In evaluating whether plaintiffs were provided the process due, courts consider three factors: "1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

4

substitute procedural safeguards; and 3) the government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Qing Tian v. United States*, 1:15-cv-264, 2017 WL 2964910, at *5 (S.D. Ohio July 12, 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### III. LAW & ANALYSIS

#### A. APA

##### a. Sufficiency of evidence

The Court can reach but one conclusion regarding the USCIS's denial of Mr. Levy's I-130 petition: it was not "arbitrary and capricious" and thus did not violate the APA. As the BIA explained in its opinion, an I-130 Petition may be revoked at any time where "good and sufficient cause" exists to revoke the petition. 8 U.S.C. § 1155. Good and sufficient cause to revoke exists where, at the time the notice of intent to revoke is issued, the evidence of record warrants denial of the I-130 petition. *See Matter of Tawfik*, 20 I. & N. Dec. 166, 170 (BIA 1990). Here, USCIS concluded that denial was required by 8 U.S.C. § 1154(c), which provides that no I-130 petition shall be approved if "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." As the Government explained in its Notice of Intent to Revoke, Doc. 15, PageID 303–06, it concluded that Ms. Mamedova entered into her prior marriage to Mr. White for the purpose of evading the immigration laws, so 8 U.S.C. § 1154(c) made her ineligible for an I-130 petition. Reviewing the record in the case *de novo*, the BIA concluded that there was

5

"substantial and probative evidence that the beneficiary's marriage to her previous spouse was entered into for the purpose of evading the immigration laws." Doc. 15, PageID 160.[1]

Mr. Levy and Ms. Mamedova contend that USCIS "relied on extremely weak circumstantial evidence and unreasonable inferences in reaching its unsupported conclusion that Ms. Mamedova entered into a fraudulent marriage to Mr. White." Doc. 18, PageID 522. The crux of their argument is that USCIS does not have adequate evidence to conclude that Ms. Mamedova married Mr. White "for the purpose of evading the immigration laws." *Id*. at PageID 528 (citing 8 U.S.C. § 1154(c)). The Court disagrees. As mentioned above, there were numerous pieces of evidence to support the conclusion that the marriage between White and Mamedova was fraudulent. These include: 1) Ms. Mamedova was only married to Mr. White for one day, 2) at the time of the marriage, she was living with another man who entered into a fraudulent marriage shortly after her marriage to Mr. White, and 3) a man convicted of arranging fraudulent marriages assisted with her divorce. This Court does not undertake to itself assess the evidence *de novo*. It recites this evidence only to explain that it finds USCIS's conclusion regarding Ms. Mamedova's marriage to Mr. White to be reasonable, not arbitrary.[2]

---

[1] The standard of proof necessary for bar approval of a visa petition under 8 U.S.C. § 1154(c) is "substantial and probative evidence." *Matter of P. Singh*, 27 I&N Dec. 598 (BIA 2019). This means the evidence "must establish that it is more than probably true that the marriage is fraudulent." *Id.* at 607. Circumstantial evidence can suffice. *Id.* at 608. Additionally, the § 1154(c) prohibition applies whether or not an I-130 petition associated with the previous marriage was actually filed. *See Matter of Isber*, 20 I&N Dec. 676 (BIA 1993).

[2] Because this Court does not review the BIA's decision *de novo*, it is not necessary to address each of Plaintiffs' arguments regarding the information relied on by the BIA. Plaintiffs contend, for example, that the BIA improperly relied on Ms. Mamedova's association with Mr. Bakelov when "nothing in the record directly links Ms. Mamedova to any of the marriages that he arranged." Doc. 18, PageID 524. Whatever the force of each of these arguments individually, the evidence taken as a whole supports the conclusion that the BIA's revocation of the I-130 petition was reasonable.

Mr. Levy and Ms. Mamedova also argue that the delay between USCIS's initial approval of the I-130 and its later revocation prejudiced them, such that the ultimate denial was arbitrary and capricious in violation of the APA. Doc. 18, PageID 525. Specifically, they argue that this delay impacted their ability to obtain documentary evidence they might have used to defend against revocation. This argument has some force. The decision to revoke the I-130 petition eight years after approval appears to have made it more difficult for Mr. Levy and Ms. Mamedova to respond to the revocation notice. Mr. Levy and Ms. Mamedova point to no authority, however, for the proposition that a long delay between the granting and later revocation of an I-130 petition means that such revocation was arbitrary and capricious and thus violated the APA. The Court finds no basis to reach such a conclusion here, where there was significant contemporaneous evidence in the record regarding Ms. Mamedova's marriage to Mr. White. Such evidence was available because USCIS initially—in August 2007—submitted a Notice of Intent to Deny ("NOID") Mr. Levy and Ms. Mamedova's petition, which mentioned Ms. Mamedova's previous marriage to Mr. White and some of its suspicious characteristics. Doc. 15, PageID 450. Mr. Levy and Ms. Mamedova each provided some information on the previous marriage in their response to the NOID. Doc. 15, PageID 378, 383. As a result, USCIS was able to collect information on Ms. Mamedova's marriage to Mr. White from shortly after the end of that marriage, and Mr. Levy and Ms. Mamedova had an opportunity to provide information at that time.[3]

---

[3] The Court also observes that it would be inconsistent with the relevant statutory scheme to find USCIS's decision arbitrary solely because of the length of time between the purportedly fraudulent marriage and the USCIS's NOIR. As explained above, 8 U.S.C. § 1154(c) bars approval of an I-130 petition on behalf of a person who has *ever* previously entered into a marriage to evade the immigration laws. There is no statute of limitations for this ban; any prior fraudulent marriage precludes approval of a future I-130 petition.

b. **Procedure**

Mr. Levy and Ms. Mamedova also contend that USCIS's decision ran afoul of the APA because the agency failed to abide by its regulations with respect to providing them the evidence it relied on in making its decision to revoke the I-130 petition. USCIS's obligations with respect to advising petitioners of information it relied on in coming to a decision are set out in 8 C.F.R. § 103.2(b)(16), which provides, in relevant part:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered. . . .

This regulation does not require USCIS to provide to petitioners the evidence itself. It "simply obligates USCIS to advise the petitioner of the unknown derogatory information, not to turn over physical copies of the evidence. . . . [A] summary of the evidence suffices." *Gadzhieva v. Lynch*, 2:15-cv-2651, 2017 WL 11457230, at *8 (S.D. Ohio July 20, 2017). Mr. Levy and Ms. Mamedova's argue that they were entitled to the complete record on which USCIS relied in making its revocation decision. Doc. 18, PageID 530. But a summary of the relevant evidence suffices, so this argument fails.[4]

As a backup, Mr. Levy and Ms. Mamedova argue that USCIS's summary of the evidence against them was inadequate because it failed to mention two investigations its Fraud Detection and National Security unit conducted regarding Ms. Mamedova's marriage to Charles White, and also failed to mention a Notice of Intent to deny it issued to Mr. Ahmedov. Doc. 18, PageID 523. They provide no authority, however, for a requirement that

---

[4] Mr. Levy and Ms. Mamedova filed Freedom of Information Act (FOIA) requests seeking the record in the case, Doc. 18, PageID 524 n.7, which were denied. This doesn't change the analysis, because Mr. Levy and Ms. Mamedova were not entitled to a copy of the Administrative Record, but were only entitled to a summary of USCIS's evidence, which the agency provided.

8

USCIS describe all relevant information it has collected. Instead, it need only provide a summary of the basis for its decision that is "sufficient to inform Plaintiffs of, and allow them an opportunity to rebut, the allegations of marriage fraud." *Gadzhieva*, 2017 WL 11457230, at *9. The Notice of Intent to Revoke cleared that bar: it advised Mr. Levy and Ms. Mamedova that the USCIS was revoking the I-130 petition because of Ms. Mamedova's prior marriage to Mr. White and explained the reasons for that conclusion, among them the short duration of the marriage, Ms. Mamedova living with Mr. Ahmedov at the time, and her connections to Mr. Bakalov. This notice provided a full and fair opportunity for Mr. Levy and Ms. Mamedova to respond to the evidence, which they did, providing affidavits regarding Ms. Mamedova's prior marriage to Mr. White. Doc. 15, PageID 291–296.

In sum, USCIS's Notice of Intent to Revoke, *Id.* at PageID 283–87, complied with all relevant regulations.[5]

### B. Fifth Amendment Due Process

Mr. Levy and Ms. Mamedova also contend that USCIS's revocation of their I-130 petition violated their rights under the due process clause of the Fifth Amendment to the U.S. Constitution. That amendment provides, in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. As explained above, to prevail here Mr. Levy and Ms. Mamedova first must show a protected interest in "life, liberty or property." There are several barriers to this showing. First, in a related context,

---

[5] The two pieces of evidence emphasized by Mr. Levy and Ms. Mamedova—documentation of the two investigations into Ms. Mamedova's marriage to Mr. Levy and Mr. Ahmedov's Notice of Intent to Deny—were not relied on by the USCIS in reaching its decision, which explains why they were not mentioned in the Notice of Intent to Revoke. As summarized by the BIA, the decision to revoke was based on uncontroverted facts regarding Ms. Mamedova's marriage to Mr. White, *not* the FDNS investigations into the prior marriage, which were inconclusive. Mr. Levy and Ms. Mamedova seem to assert that USCIS was obliged to make them aware of the inconclusive prior investigations but point to no authority for that proposition. There is no *Brady* rule in I-130 administrative proceedings, requiring the USCIS to disclose to petitioners any potentially exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963).

9

the Sixth Circuit has rejected the argument that a citizen spouse has a right under the due process clause to have his or her alien spouse remain in the country. *Almario v. Attorney General*, 872 F.2d 147, 151 (6th Cir. 1989). Second, while the Constitution applies to "aliens physically present in the United States as well as citizens," *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006), the Sixth Circuit has held that an alien spouse "has no protected interest in an I-130 petition." *See id.* at 496 n.2 (citing *Wright v. INS*, 379 F.2d 275, 276 (6th Cir. 1967)).

So the basis for the protected interest cannot be the citizen spouse's interest in his or her spouse remaining in the country, nor can it be any interest held by the alien spouse. Nonetheless, the Sixth Circuit has left open this question, observing there is a "decent amount of support for the proposition that [8 U.S.C.] § 1154(b) creates an interest to which procedural due process rights attach." *Bangura*, 424 F.3d at 496 n.2. That support comes from the fact that "non-discretionary statutes create property interests for the purpose of procedural due process," *id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)), and the language of 8 U.S.C. § 1154(b) is nondiscretionary—it provides that the Attorney General "*shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition . . . ." (emphasis added). The Ninth Circuit has embraced this logic in *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013), as has at least one court in this district. *See Simaga*, 2023 WL 5209531, at *8 ("[B]ecause of the property right a petitioner holds in an I-130 Petition, due process requires an opportunity to demonstrate eligibility.").

The Court need not wade into this debate, because USCIS is entitled to summary judgment whether or not Mr. Levy has a property interest in his I-130 Petition on Ms. Mamedova's behalf. Where USCIS provides I-130 petitioners a proper notice of its intent to

10

deny a petition, and otherwise complies with relevant regulations, USCIS has not violated petitioners' due process rights. *See Simaga*, 2023 WL 5209531, at *10 ("The Sixth Circuit rejects I-130-related due process claims where the petitioner and beneficiary received sufficient process—in other words, where USCIS complied with its own adjudication regulations.") (citing *Abdulla v. Cuccinelli*, 840 Fed. Appx. 827, 840 (6th Cir. 2020)); *Singh v. United States*, 1:20-cv-799, 2021 WL 229963 (N.D. Ohio Jan. 22, 2021) (dismissing due process claim over denial of I-130 Petition where USCIS provided adequate summary of evidence on which it relied); *Mullaj v. Napolitano*, No. 12-cv-14309, 2013 WL 2397390 (E.D. Mich. May 31, 2013) (same). *See also Opoku-Agyeman v. Perez*, 886 F.Supp.2d 1143, 1149 (W.D. Mo. July 24, 2012) ("A due process argument will fail if a petitioner cannot show USCIS violated 8 C.F.R. § 103.2.").[6] Here, USCIS "complied with its own adjudication regulations," *Simaga*, 2023 WL 5209531, at *10, so it did not violate Mr. Levy or Ms. Mamedova's Fifth Amendment rights.

## IV. CONCLUSION

USCIS's revocation of the I-130 petition filed on Ms. Mamedova's behalf was not arbitrary and capricious in violation of the Administrative Procedures Act. Nor did it violate Mr. Levy's Fifth Amendment rights. Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.

---

[6] The Court acknowledges that in *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802 (9th Cir. 2020), the court concluded that due process required more than what federal regulations require. In that case, the Ninth Circuit required that petitioners be given access to "the completed administrative record on which the USCIS and BIA relied in reaching its determinations." 955 F.3d at 813. As Mr. Levy and Ms. Mamedova acknowledge, that is the "distinct minority position." Doc. 18, PageID 530. The position adopted by this Court—that petitioners need only be provided with a proper summary of the evidence against them—is the majority position. The Court also notes that the notice provided in *Zerezghi* was *not* proper. Instead, it "provided no crucial details," so petitioners there "had no meaningful opportunity to respond" to the evidence against them. *Zerezghi*, 955 F.3d at 811, 813.

**IT IS SO ORDERED.**

March 11, 2025

Jeffery P. Hopkins
United States District Judge